SHERRY CHASTEEN,                                          Case No. 1:17-cv-231

        Plaintiff,                                          Black, J.
                                                         Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Sherry Chasteen filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled.   *See* 42 U.S.C. §405(g).   Proceeding through counsel, Plaintiff presents four specific claims of error, all of which the Defendant disputes.[1] For the reasons explained below, I conclude that the ALJ's finding of non-disability should be REVERSED and REMANDED because it is not supported by substantial evidence in the administrative record.

**I.  Summary of Administrative Record**

The instant case is Plaintiff's second appeal before this Court.   In January 2012, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and for Supplement Security Income ("SSI"), alleging a disability onset date of May 8, 2011, due to physical impairments. (Tr. 15-17).   After Plaintiff's claims were denied initially on April 18, 2012 and upon reconsideration on August 16, 2012, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ").   On October 18, 2013, ALJ David A. Redmond held

---

[1] Plaintiff also asserts, more generally, that the ALJ's decision is not supported by substantial evidence. (Doc. 9 at 9, Error No. 5).  Despite its inclusion as a fifth claim, Plaintiff' includes no distinct argument concerning this claim.  The Court has considered this umbrella claim in the context of each of Plaintiff's more specific claims, as well as in the context of the record as a whole.

a hearing at which Plaintiff appeared with counsel.[2] The ALJ heard testimony from both Plaintiff and an impartial vocational expert. (Tr. 31-49). On March 26, 2014, ALJ Redmond denied Plaintiff's application in a written decision. (Tr. 12-24). In that decision, the ALJ found just two severe impairments: "residuals of a left foot fracture and obesity." (Tr. 18). Although he did not agree that the record showed a conclusive diagnosis of Complex Regional Pain Syndrome ("CRPS"), which he believed to be only "speculation" based in part on the lack of objective findings, (Tr. 22), he concluded that Plaintiff would still be limited to only sedentary work, so long as she could "sit, stand and change positions at will without losing the ability to maintain attention on the assigned duties of the job." (Tr. 18).

The Appeals Council initially denied Plaintiff's request for further review. Thereafter, Plaintiff sought judicial review from this Court. *See* Case No. 1:15-cv-646. Prior to this Court's review of the merits of Plaintiff's claim, the parties filed a Joint Stipulation to Remand to the Commissioner for further proceedings, agreeing to reweighing of the medical opinions, reconsideration of Plaintiff's severe impairments, and a new determination of Plaintiff's residual functional capacity. (Tr. 447).

Upon remand, the Appeals Council vacated ALJ Redmond's decision and directed reconsideration of Plaintiff's claim. Specifically, the Appeals Counsel held that ALJ Redmond failed to provide "good reasons" for his decision to give "very little weight" to the opinions of the treating orthopedist, John Sulentic, D.O., who opined that Plaintiff's CRPS caused disabling functional limitations. The Appeals Council noted that ALJ Redmond failed to comply with SSR 03-2p, which explains that "conflicting evidence in

---

[2] Plaintiff continuously has been represented by Steven B. Horenstein, although his associate, Robert C. Walker, appeared at the 2013 administrative hearing.

the medical record is not unusual" in CRPS cases. (Tr. 456). Additionally, ALJ Redmond's decision reflected factual error, insofar as he stated that no injections, blocks or surgery were conducted, but failed to note that both blocks and extended chronic pain management had been recommended as treatments, but that Plaintiff was unable to obtain that recommended treatment due to financial/insurance reasons. (*Id.*) In addition, the Appeals Council determined that ALJ Redmond's decision "did not contain an adequate assessment of the claimant's alleged symptoms" under SSR 16-3p. (Tr. 457). On remand, the Appeals Council directed the ALJ to further evaluate Plaintiff's impairments including Complex Regional Pain Syndrome under SSR 03-2p, to give further consideration to treating source opinions including the development of additional evidence if necessary, to redetermine Plaintiff's RFC, and to provide better analysis of Plaintiff's symptoms under SSR 16-3p. (Tr. 457-458).

On November 16, 2016, ALJ Mark Hockensmith conducted a new evidentiary hearing at which Plaintiff appeared with counsel. Like ALJ Redmond, ALJ Hockensmith heard testimony from both Plaintiff and an impartial vocational expert. (Tr. 385-424). On December 1, 2016, ALJ Hockensmith denied Plaintiff's application in a written decision, finding that Plaintiff was not disabled. (Tr. 341-357). After the Appeals Council denied further review, Plaintiff filed this second appeal, seeking judicial review of the Commissioner's 2016 denial of benefits.

Although Plaintiff was still a "younger individual" at the time she filed her applications, she had moved up to the "closely approaching advanced age" category, at 51 years old, by the time ALJ Hockensmith rendered his 2016 adverse decision. Plaintiff earned her GED and has past relevant work as a production worker, home health aide,

and warehouse worker. (Tr. 355). She continues to allege disability since May 2011 primarily due to left foot pain and swelling.

Based upon the record and testimony presented at the hearing, ALJ Hockensmith found that Plaintiff had the following severe impairments: "residuals of a left foot fracture with <u>possible</u> CRPS, osteoporosis, and obesity." (Tr. 347, emphasis added). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. In contrast to the 2014 decision wherein ALJ Redmond restricted Plaintiff to sedentary work,[3] in 2016 the ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform the somewhat higher exertional level of light work, with the following non-exertional limitations:

> (1) ability to change positions every 30 minutes while remaining at workstation; (2) no use of foot controls with the left lower extremity; (3) occasional push/pull with the left lower extremity; (4) no ladders, ropes, or scaffolds; (5) occasional ramps and/or stairs; (6) occasional balancing, kneeling, and crouching; (7) no crawling; (8) avoid concentrated exposure to extreme cold and vibration; (9) no work at unprotected heights or with dangerous machinery; and (10) must be permitted the opportunity to elevate leg twice during the workday for 20-30 minutes at a time.

(Tr. 349). The parties agree that Plaintiff is unable to perform her past relevant work. However, the ALJ determined that jobs exist in significant numbers in the national economy that she can still perform. Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB or SSI. (Tr. 355-57). The Appeals Council denied Plaintiff's request for review, leaving ALJ Hockensmith's decision as the Defendant's final determination.

---

[3]At the age of 50, if Plaintiff had been limited to sedentary work, she would have been entitled to a presumption of disability under applicable Grid Rules.

In her current appeal to this Court, Plaintiff argues that the ALJ erred by: (1) rejecting the treating orthopedist, Dr. Sulentic's opinion; (2) unreasonably assessing Plaintiff's CRPS diagnosis; (3) inadequately supporting his analysis of her daily activities; and (4) relying on a reviewing consultant who did not have access to the most significant records. Having reviewed the record closely, I find Plaintiff's first two assignments of error to be well-taken and dispositive. As such, I agree that the ALJ's 2016 decision is not substantially supported, and herein recommend that this matter be reversed and remanded back to the ALJ for additional fact-finding.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation

omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits

must present sufficient evidence to show that, during the relevant time period, he or she suffered impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

## B.  The ALJ's Decision is not Support by Substantial Evidence

### 1.  ALJ's Consideration of Plaintiff's CRPS Diagnosis

The case presented is one of the more challenging types of social security claims that an ALJ must review:  the type of case in which the plaintiff maintains she has disabling functional limitations due to pain, but where objective medical records hold relatively few clues as to the source of that allegedly disabling pain.  Several physicians have described Plaintiff's condition as a type of "pain syndrome."  In 2014, faced with scant medical evidence that contrasted with Plaintiff's subjective reports, ALJ Redmond heavily discounted Plaintiff's report of disabling limitations as "not entirely credible," (Tr. 19), although he nevertheless limited her to sedentary work with a sit/stand option.  Upon appeal of ALJ Redmond's 2014 decision to this Court, the Commissioner agreed to a joint stipulation of remand based upon several clear errors.  The Appeals Council set forth those errors in some detail, in order to provide additional guidance on remand. Unfortunately, the 2016 adverse decision by a newly assigned ALJ reflects additional error.

As explained in the Appeals Council's Order of Remand, the working diagnosis suggested and/or made by several of Plaintiff's physicians is Complex Regional Pain Syndrome ("CRPS"), a somewhat rare and poorly understood pain syndrome "used to describe a constellation of symptoms and signs that may occur following an injury to bone

or soft tissue," even though "[t]he precipitating injury may be so minor that the indificual does not even recall [it]." Social Security Ruling 03-2p, 2003 WL 22399117 (Oct. 20, 2003). CRPS "most often resul[s] from trauma to a single extremity." *Id*. at *1.

SSR 03-2p was developed by the Agency to provide policy guidance for the evaluation of claims of Reflex Sympathetic Dystrophy Syndrome ("RSDS"), also commonly known as CRPS, Type I. *Id*. Because SSR 03-2p is highly relevant to Plaintiff's claim in this case, portions have been quoted at some length. According to SSR 03–2p:

> The most common acute clinical manifestations [of CRPS] include complaints of intense pain and findings indicative of autonomic dysfunction at the site of the precipitating trauma. Later, spontaneously occurring pain may be associated with abnormalities in the affected region involving the skin, subcutaneous tissue, and bone. <u>It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual. When left untreated, the signs and symptoms of the disorder may worsen over time.</u>

> Although the pathogenesis of this disorder (the precipitating mechanism(s) of the signs and symptoms characteristic of RSDS/CRPS) has not been defined, dysfunction of the sympathetic nervous system has been strongly implicated.
> …
> Abnormal sympathetic nervous system function may produce inappropriate or exaggerated neural signals that may be misinterpreted as pain. In addition, abnormal sympathetic stimulation may produce changes in blood vessels, skin, musculature and bone. Early recognition of the syndrome and prompt treatment, ideally within 3 months of the first symptoms, provides the greatest opportunity for effective recovery.

> *How Does RSDS/CRPS Typically Present?*
> RSDS/CRPS patients typically report persistent, burning, aching or searing pain that is initially localized to the site of the injury. The involved area usually has increased sensitivity to touch. The degree of reported pain is often out of proportion to the severity of the precipitating injury. Without appropriate treatment, the pain and associated atrophic skin and bone changes may spread to involve an entire limb. Cases have been reported to progress and spread to other limbs, or to remote parts of the body.

> Clinical studies have demonstrated that when treatment is delayed, the signs and symptoms may progress and spread, resulting in long-term and

even permanent physical and psychological problems.  Some investigators have found that the signs and symptoms of RSDS/CRPS persist longer than 6 months in 50 percent of cases, and may last for years in cases where treatment is not successful.

*Id.* at *1-2 (emphasis added).

Although SSR 03–2p further provides that CRPS may be a basis for a finding of "disability," the policy clarifies that disability may not be established on the basis of an individual's statement of symptoms *alone*.  Instead, CRPS can be established by intense pain out of proportion to the severity of any documented precipitant and one or more of the following clinically documented signs: swelling; automonic instability (including changes in skin color or texture, or changes in skin temperature); abnormal hair or nail growth; osteoporosis; or involuntary movements of the affected region. *Id.* at *4.

When longitudinal treatment records document persistent limiting pain in an area where one or more of these abnormal signs has been documented at some point in time since the date of the precipitating injury, disability adjudicators can reliably determine that RSDS/CRPS is present and constitutes a medically determinable impairment.  It may be noted that the treatment records that these signs are not present continuously, or the signs may be present at one examination and not appear at another.  Transient findings are characteristic of RSDS/CRPS, and do not affect a finding that a medically determinable impairment is present.

*Id.*  SSR 03-2p "places great reliance on 'longitudinal clinical records reflecting ongoing medical evaluation and treatment from the individual's medical sources, especially treating sources."  *Carter v. Com'r of Soc. Sec.*, 2014 WL 2117085, at *8 (S.D.Ohio 2014) (remanding for further proceedings based on lack of "good reasons" and inadequate consideration of SSR 03-02p). "It should be noted that conflicting evidence in the medical record is not unusual…due to the transitory nature of its objective findings and the complicated diagnostic process involved.  Clarification of any such conflicts in the medical

evidence should be sought first from the the individual's treating or other medical sources." SSR 03-2p at *5.

The Appeals Council provided express instructions to the ALJ on remand, emphasizing that 03-2p explains that "conflicting evidence…is not unusual" in CRPS cases, and that the fact that Plaintiff's gait was sometimes antalgic and sometimes normal, that she sometimes had hypersensitivity to touch and sometimes did not, and sometimes had fewer objective findings of CPRS "were not compelling reasons to give very little weight to the opinions" of Plaintiff's treating orthopedist, Dr. Sulentic.  (Tr. 456). In addition, the Appeals Council directed additional analysis of Plaintiff's symptoms, particularly in light of evidence that she had been "unable to afford regular and/or more aggressive forms of treatment."  (Tr. 457).

In the 2016 decision, the ALJ did not find definitive evidence of CPRS but characterized "possible" CPRS as a "severe impairment.  (Tr. 347).  Dr. Sulentic treated Plaintiff soon after her initial foot fracture in May 2011.  However, by November 15, 2011, he noted that despite the initial healing of the fracture, she had developed generalized foot and ankle pain.  (Tr. 282).  He expressed "concern about the development of CRPS with the degree of light touch sensitivity, cold and temperature sensitivity and generalized mottling that she is developing within her foot and ankle." (*Id.*)  Dr. Sulentic noted clinical findings of a "temperature asymmetry" and a continued "purplish hue to the foot region" despite being "improved in comparison to her last visit." (*Id.*)  He also noted findings of pain to "light touch and even simple gentle range of motion of the ankle," with the "focal area of tenderness…difficult to localize," which "has been this way for quite some time." Id.  He expressed his belief that her "more persistent generalized non-specific foot

pain…is related to a CRPS like pattern." (Id.) He prescribed Lyrica and Vicodin, but referred her to "a pain specialist for opinion regarding management of her chronic regional pain syndrome or a second opinion to help in making this diagnosis, as otherwise I feel she has reached MMI regarding the initial trauma but with the persistence of symptoms I am poorly optimistic …[about] significant improvement." (Id.) Dr. Sulentic also believed a ganglion block may be beneficial and noted the lack of any opportunity to continue therapy due to her financial constraints and lack of insurance approval. (Id.)

The ALJ disregarded the instructions of the Appeals Council and of SSR 03-2p by overly relying on the allegedly inconsistent findings of Plaintiff's CRPS, and unfairly characterized Dr. Sulentic's November 15, 2011 note as reflecting "significant" improvement when the only "improvement" was in the amount of purplish mottling, and Dr. Sulentic otherwise expressed significant concern. (Tr. 282). He also selectively quoted from records wherein Plaintiff reported to Dr. Sulentic that a nerve pain medication, Lyrica, had had a "big impact" in improving her pain. Despite that reported improvement, Dr. Sulentic noted in the same record that she is "still quite symptomatic" and he doubled her does of Lyrica and refilled her Vicodin, despite noting he was "poorly optimistic" about any future improvement.

The ALJ suggests that no diagnosis of CRPS was actually made. That is incorrect. While Dr. Sulentic may have held off on making a formal diagnosis in November 2011, despite clearly believing that Plaintiff's symptoms and clinical findings were best explained by CRPS, he more clearly diagnosed moderate to severe CRPS in his later clinical records. (See Tr. 335, 339). Initially, however, he referred Plaintiff to a pain

management specialist in part to assist him in making the diagnosis.[5]  On May 22, 2013, he noted the following clinical findings:  vasomotor abnormalities, bone atrophy, bone loss (osteopenia) and decreased skin temperature.  (Tr. 335).   On the same date, Dr. Sulentic completed a functional questionnaire in which he opined that she was limited to standing 15 minutes or less at one time, occasionally needs to elevate her legs, has difficulty walking, suffers from "moderate to severe" pain.  (Tr. 337-338).   He noted that she "is walking with a cane and is forced to walk with a cane" and had not been able to participate in recommended treatment of pain management and nerve blocks.   (Tr. 339). Nevertheless, he noted that bone scans demonstrated some improvement in bone density, as compared to prior x-rays.   (Id.)

On February 14, 2012, Plaintiff was examined by Thomas Knox, M.D., a pain specialist.   Dr. Knox also clearly diagnosed CRPS on the basis of Plaintiff's intense pain, swelling and purplish discoloration, and failure of other treatment.  (Tr. 295-296).   He recommended a nerve block as treatment for her CRPS.  (Tr. 296).   In addition to the diagnosis by Dr. Knox and inferred diagnosis by Dr. Sulentic, both treating physicians, SSR 03-2p itself indicates that a claimant need have only one of several of the clinical symptoms found over the longitudinal history of Plaintiff's examinations:  swelling, mottling, and temperature disparity.   The ALJ noted that at times, Dr. Knox found no swelling, but the inconsistency of symptoms such as swelling are hallmarks of CRPS, which is why SSR 03-2p emphasizes longitudinal records.   Those records consistently over time reflect Plaintiff's reports to her treating physicians of intense pain, and variable

_____

[5]Considering that CRPS is a relatively rare condition, it is not surprising that he initially referred Plaintiff to a pain specialist to assist him in making the diagnosis.

but overall consistent clinical findings of swelling, mottling, temperature disparity, and the need for a cane.

On February 25, 2013, a consulting physician, Gary Ray, M.D. examined Plaintiff. Dr. Ray noted that Plaintiff's ambulation without her cane reflected a mild to moderate left antalgic gait pattern, with a reduction to "mild left antalgic gait" when using her cane. On the date of his one-time examination, he found no swelling or other deformity despite her reports of swelling whenever she stands or walks for "longer periods of time," but did note a temperature disparity in her left foot as well as the antalgic gait. He found no hypersensitivity that day but noted that she reported that symptom. She also reported "constant left foot pain most severe at the top of the foot but involving the whole foot with pain going up to the knee." (Tr. 309). He also noted tenderness throughout her ankle and left foot area and again diagnosed CRPS. Dr. Ray stated that he found "minimal objective evidence of [CRPS]" on the day of his evaluation, but he did not dispute that diagnosis. Indeed, the inclusion of findings by Dr. Ray of temperature disparity, pain, and antalgic gait are consistent with CRPS. Dr. Ray limited Plaintiff to essentially sedentary work, opining that she could stand for only one hour at a time and walk for not more than 20 minutes, with use of a cane "obligatory when walking on unlevel surfaces." (Tr. 311). He noted "pain with motion" of the left ankle. (Tr. 315).

On May 8, 2013, another orthopedist, Robert Raines, M.D., also examined Plaintiff, noting some edema as well as her history of pain. Dr. Raines also diagnosed CRPS based on an "exam and history [that] are classic for the CRPS following a fracture to her cuboid." (Tr. 327, 335). Given the variability of the symptoms described in SSR 03-2p, the remarkable consistency of virtually all of Plaintiff's longitudinal records and

assessments by treating and examining providers, the undersigned finds error in the ALJ's rejection and/or minimization of Plaintiff's CRPS diagnosis.

Moreover, the undersigned agrees with Plaintiff that the ALJ impermissibly attempted to "play doctor" in his interpretation of the medical evidence. Namely, the ALJ decision seeks to diminish the significance and severity of Plaintiff's CRPS upon a finding that "objective testing related to the lower extremity has remained normal." (Tr. 402). More specifically, the ALJ concludes that the failure of EMG and QSART testing to "reveal any abnormalities… typically seen in cases involving CRPS" reasonably indicates either that Plaintiff does not suffer from the condition and/or that the pain symptoms she attributes to the same must be less severe than alleged. (Tr. 406).  Such a finding is not made in accordance with Agency Regulations and controlling law.  As noted by Plaintiff, SSR 03-2p, which specifically instructs ALJ's on the diagnostic criteria for CRPS, in no way requires or even references the need for abnormalities to manifest on EMG or QSART testing. See SSR 03-2p.  The ALJ also purports to discredit Plaintiff's allegations of disabling CRPS pain on the following basis: "The claimant's care has remained conservative and consists mainly of medication, which the claimant reported to her treating sources was beneficial in reducing her symptoms." (Tr. 403). Again, as detailed by Plaintiff, the record indicates that she received dedicated pain management services through Dr. Knox's office including not only heavy-duty pain killers, but also a sympathetic plexus block procedure. (*See* Tr. 636-67 & 683). She also sought treatment from a neurologist and traveled to the Cleveland Clinic to follow through with his recommendations for QSART testing.

The undersigned does not dispute that it is the ALJ's prerogative to resolve conflicts and weigh the evidence of record. However, it appears in making this determination, the ALJ, in part, impermissibly acted as his own medical expert. See *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir.1985); *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir.1983); *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir.1975). While an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, he is not permitted to make his own evaluations of the medical findings. As recognized by this Court, "[t]he ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record." *Mason v. Comm'r of Soc. Sec.*, No. 1:07–cv–51, 2008 WL 1733181, at *13 (S.D.Ohio April 14, 2008) (Beckwith, J.; Hogan, M.J.) (citing *Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir.1963); *Clifford v. Apfel*, 22.7 F.3d 863, 870 (7th Cir.2000); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir.1985); *Sigler v. Sec'y of H.H.S.*, 892 F.Supp. 183, 187–88 (E.D.Mich.1995)). *See also Rosa v. Callahan*, 168 F.3d 72, 78–79 (2nd Cir.1999) ("[T]he ALJ cannot arbitrarily substitute his own opinion for competent medical opinion."); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").

In light of the foregoing, the undersigned finds that the ALJ's evaluation of Plaintiff's CRPS is not supported by substantial evidence.

### 2. ALJ's Rejection of Dr. Sulentic's Opinion

Plaintiff further asserts that the ALJ's rejection of Dr. Sulentic's opinion is inappropriate. The undersigned agrees.

The opinions of treating and examining sources are generally entitled to more weight than opinions of consulting and non-examining sources. 20 C.F.R. § 404.1527(d); see *also West v. Comm'r Soc. Sec. Admin.*, 240 Fed. Appx. 692, 696 (6th Cir. 2007) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981)) ("[R]eports from treating physicians generally are given more weight than reports from consulting physicians ...."). In fact, it is well-established that an ALJ "'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner of Social Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson* v. *Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004). If the ALJ does not accord controlling weight to a treating physician, the ALJ still must determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(d)(2); *but see Tilley v. Com'r of Soc. Sec.*, No. 09–6081, 2010 WL 3521928, at *6 (6th Cir. Aug.31, 2010) (indicating that, under *Blakely* and the good reasons rule, an ALJ is not required to explicitly address all of the six factors within

20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision).

Despite the presumption that a treating physician's opinions will be given controlling weight, an ALJ is not required to give that weight if the opinions of a treating physician are conclusory and unsupported. *See Anderson v. Comm'r Soc. Sec.*, 195 Fed. Appx. 366, 370 (6th Cir. 2006) ("The ALJ concluded, properly in our view, that the [treating physician's] treatment notes did not support and were inconsistent with his conclusory assertion that appellant was disabled."); *see also Kidd v. Comm'r of Soc. Sec.*, 283 Fed. Appx. 336, 340 (6th Cir. 2008) (citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994)) (holding that an ALJ need not credit a treating physician's conclusory opinions that are inconsistent with other evidence).

Here, the ALJ acknowledged that Dr. Sulentic was a treating source, and further acknowledged the regulatory scheme that ordinarily would afford controlling weight to his opinions. However, the ALJ reasoned that Dr. Sulentic's opinions were not entitled to controlling weight because his CRPS diagnosis was inconsistent with the record as a whole, his opinion concerning the length of time that Plaintiff can stand (15 minutes or less) was more restrictive than Plaintiff's own testimony (20-25 minutes), and his prescribed limitations were not consistent with "normal objective testing, as well as the lack of muscle atrophy or motor deficit that would reasonably be expected…." (Tr. 354-355; *see also* Tr. 310-311).

The ALJ also criticized Dr. Sulentic's "limited longitudinal treatment history" because he had not examined Plaintiff for 18 months at the time he rendered his opinions in May 2013, despite having seen Plaintiff five times previously. (Tr. 354). The ALJ

contrasted Dr. Sulentic's opinions with the findings of two other treating physicians: Dr. Knox and Dr. Ray, as well as with ostensibly normal EMG and QSART testing performed at the request of a third source, Dr. Schaublin. (*Id.*) The ALJ appeared to acknowledge that the record consistently reflected "some signs" of CRPS but reasoned that the clinical findings supported "mild to no more than moderate" functional restrictions from that condition. (*Id.*)

Here, the reasons given by the ALJ in rejecting Dr. Sulentic's findings were not supported by the record and therefore do not qualify as "good reasons" as required under the regulations. *See Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir.2004) (The ALJ must articulate "good reasons" for not giving weight to a treating physician's opinion and such reasons must be based on the evidence of record). Notably, the ALJ rejected Dr. Sulenic's findings, in part, based upon his determination that Dr. Sulenic's CRPS diagnosis was inconsistent with the record as a whole. However, as detailed above, the ALJ erred in making this finding. Furthermore, Dr. Sulentic's findings were consistent with the record evidence that revealed a variety of significant clinical abnormalities in Plaintiff's left lower extremity supporting both Dr. Sulentic's assessment and the severity of Plaintiff's CRPS. Namely, notes indicating temperature asymmetry, discoloration, palpable tenderness to even light touch, swelling, an antalgic cane-reliant gait, moderate swelling, edema, and painful range of motion. See Tr. 333, 335-36, 346-47, 361, 381, 386, 390, 636-63, 685, 688, & 764).

Additionally, Dr. Sulentic's findings are consistent with those of Dr. Thomas and Dr. Ray. Notably, Dr. Thomas is the state agency medical consultant who determined that plaintiff is limited to no more than two hours of combined standing and walking. (Tr.

354). See 20 CFR § 416.927(c) (Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion). The ALJ, however, assigned little weight to Dr. Thomas' opinion in light of the normal EMG and QSART testing. However, as detailed above, the ALJ's interpretation of such evidence improper in light of Plaintiff's CRPS diagnosis.

Accordingly, the undersigned finds that the ALJ erred in failing to give controlling weight to the findings of Dr. Sulentic. As such, the Commissioner's finding that Plaintiff is capable of performing light work is not supported by substantial evidence.

### III. Conclusion and Recommendation

When, as here, the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan,* 501 U.S. 89, 100, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four remand under 42 U.S.C. § 405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir.1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect

which caused the Secretary's misapplication of the regulations in the first place." *Fauche*r, 17 F.3d at 175. All essential factual issues have not been resolved in this matter.

Here, in view of the extensive medical record evidencing disability, and the credible and controlling findings and opinions of Dr. Sulentic, Dr. Ray, Dr. Thomas and others, the ALJ failed to meet its burden of finding substantial evidence that Plaintiff is able to engage in substantial gainful activity. Here, Plaintiff's past relevant work is precluded by her impairments and she is presently over fifty years old. As such she may qualify for benefits under the Commissioner's Medical Vocational Guidelines. See 20 C.F.R. Pt. 404, Subpt. P, App 2 §201.06. Notably, Grid Rule 201.06 mandates that a person of advanced age (a with a high school education be found disabled unless she has acquired transferable skills as a result of her past relevant work which can be applied to other work with "very little, if any" vocational adjustment. 20 C.F.R., Part 404, Subpt. P, App. 2, §§ 201.00(f), 201.06. Although the court would prefer to award benefits, no transferability of skills analysis was conducted by the ALJ. Thus, for the foregoing reasons, I recommend the matter be remanded so that such an analysis can be conducted.

For the reasons explained herein, **IT IS RECOMMENDED THAT**: 1) The decision of the Commissioner to deny Plaintiff DIB and SSI benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. § 405(g) consistent with this Report and Recommendation; and 2) as no further matters remain pending for the Court's review, this case be **CLOSED.**

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

SHERRY CHASTEEN,                                    Case No. 1:17-cv-231

        Plaintiff,                                    Black, J.
                                                      Bowman, M.J.

    v.

CAROLYN W.COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.   All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.   A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).